Filed 3/16/26  P. v. Mohammed CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALI ABDUL MOHAMMED,<br><br>    Defendant and Appellant. | 2d Crim. No. B343784<br>(Super. Ct. No. 1455141)<br>(Santa Babara County) |

Ali Abdul Mohammed appeals a post-judgment order denying his Penal Code section 1172.6 petition to vacate his 2018 first degree murder conviction, which was based on a felony-murder theory.[1]  Section 1172.6 provides in relevant part, "A person convicted of felony murder . . . may file a petition . . . to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts" when certain conditions apply.

---

[1] All statutory references are to the Penal Code.

The jury found true a special circumstance allegation that appellant had committed the murder during the commission of an attempted robbery. He was sentenced to prison for life without the possibility of parole. We affirmed the judgment in an unpublished opinion. (*People v. White & Mohammed* (Apr. 9, 2021, B293313), 2021 WL 1326760, 2021 Cal.App. Unpub. LEXIS 2309 (*White I*).) Lavell White was appellant's accomplice and was jointly tried with appellant.

Appellant contends he is eligible for section 1172.6 relief because the trial court did not instruct the jury sua sponte on the *Banks/Clark* factors concerning the meaning of "reckless indifference to human life." (*People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522.) At the prima facie stage of the section 1172.6 proceeding, the superior court initially accepted appellant's contention and issued an order to show cause. (§ 1172.6, subd. (c).) This normally would have been followed by an evidentiary hearing. (*Id.*, subd. (d).) But the court subsequently denied the petition without conducting an evidentiary hearing because counsel for both parties agreed that it was "bound by [our] holding" in *People v. Superior Court (White)* (2025) 107 Cal.App.5th 1268 (*White II*), review granted March 26, 2025, S289395.

The superior court did not err in determining that it was bound by our decision in *White II*. We reaffirm the validity of our conclusions in that decision. Accordingly, we affirm.

*Prima Facie Showing Requirement and Standard of Review*

"Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief [citation], and second, make a 'prima facie

2

showing' [of eligibility for relief] [citation], before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing . . . ." (*People v. Patton* (2025) 17 Cal.5th 549, 556.) "The trial court's denial of a resentencing petition at the prima facie stage "'is a purely legal conclusion,'" which appellate courts review de novo." (*People v. Muhammad* (2024) 107 Cal.App.5th 268, 276.)

*Factual Background*

Except for the last paragraph, we summarize below the relevant facts as stated by this court in *White II*, *supra*, 107 Cal.App.5th at p. 1273, rev. gr. The last paragraph of our summary is a direct quotation from *White I*, *supra*, 2021 WL 1326760, at *3.[2]

"White, [appellant], and G.O. conspired to commit an armed robbery of R.D., a 'street' marijuana dealer. This was the plan: They would arrange to purchase marijuana from R.D. at a location in Santa Maria. When R.D. arrived in his car with the marijuana, [appellant] would enter the car with a handgun and 'get the keys . . . so the dude can't peel off.' White would stand outside the vehicle and would display a replica 'AK-47 BB gun.' [Appellant] would take whatever property was available and then get out of the vehicle.

"At about midnight, R.D. drove his car to the location where the purchase was supposed to occur. R.D.'s friend, Terence Richardson, was seated in the right front seat. [Appellant] entered the car and sat in the middle of the back seat. R.D.

---

[2] The factual summary is provided for background purposes only. We do not rely on the summary in resolving disputed issues.

showed him the marijuana. [Appellant] 'reach[ed] over,' leading R.D. to believe that he 'was grabbing to get the marijuana.' Instead, [appellant] 'took out [the] keys from the ignition, placed them . . . in the [center] console, . . . pulled out a gun and told [R.D.] to give him everything in the car.'

"R.D. 'felt something touch the side of [his] head.' He looked to his left through an open window and saw White 'outside of the driver's side window holding what appeared to be an assault rifle.' G.O. saw White standing '[r]ight outside the driver['s] door.' White was pointing the replica AK-47 at the driver.

"R.D. grabbed the car keys from the center console, started the engine, and drove away. Richardson 'was turned around swinging, swinging on the guy with the gun, so [R.D.] also started swinging on [him] telling him to get out.'

"R.D. 'heard a loud shot or bang.' [Appellant] told him 'to pull over.' R.D. pulled over and [appellant] got out of the car without taking any of the victims' property.

"Richardson told R.D. that he had been shot. The hollow-point bullet entered his torso, and he bled to death." (*White II, supra*, 107 Cal.App.5th at p. 1273, rev. gr.)

"After the shooting, [appellant] told G.O. that he shot someone. [Appellant] said he 'had no choice, he had to' fire the handgun." (*White I, supra*, 2021 WL 1326760, at *3.)

*We Cannot Assume Appellant Was the Actual Killer*

If, as indicated in the above factual summary, appellant were the actual killer of Richardson, as a matter of law he would be ineligible for section 1172.6 relief. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Cortes* (2022) 75 Cal.App.5th 198, 204.) In *White I* we concluded that the evidence

4

is sufficient to show that appellant was the actual killer. (*White I*, *supra*, 2021 WL 1326760, at \*9.) In rejecting appellant's claim that his sentence constituted cruel and unusual punishment, we referred to him as "the actual killer." (*Id.*, at \*14.) Justice Tangeman's concurring and dissenting opinion stated, "Because [appellant] was the actual killer, no relief is available to him." (*Id.*, at \*15.)

For purposes of section 1172.6, we cannot assume appellant was the actual killer. The jury found not true an allegation that appellant had "personally and intentionally discharged a firearm which proximately caused [Richardson's] death." The jury may have found the allegation not true because it believed that appellant had unintentionally discharged the firearm, or it may have believed that appellant had not discharged the firearm. During the section 1172.6 proceedings, the prosecutor stated, "[W]e're assuming [appellant] was not the shooter." (See *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183 ["'the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing.' [Citations.] By logical extension, the factual summary also may not be used to determine a petitioner's eligibility at the prima facie stage"].)

*Felony-Murder Elements for a Defendant Who*
*Was Not the Actual Killer and Did Not Intend to Kill*

"Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder [under a felony-murder theory] only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . Section 190.2' — that is, the statute defining the felony-murder special circumstance."

(*Strong*, *supra*, 13 Cal.5th at p. 708.) "*Banks* and *Clark* both substantially clarified the law governing findings under . . . section 190.2, subdivision (d): *Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Id.*, at pp. 706-707.) Although appellant was tried after *Banks* and *Clark* had been decided, the jury was not instructed on the *Banks*/*Clark* factors.

### *White II Controls the Present Appeal*

White was convicted of first degree felony murder with a special circumstance finding that the murder had been committed during an attempted robbery. The superior court granted White's section 1172.6 petition because the trial court had not instructed the jury sua sponte on the *Banks*/*Clark* factors. The superior court vacated White's murder conviction and resentenced him to attempted second degree robbery. In *White II* we issued a writ of mandate directing the superior court to reinstate the murder conviction.

White made the same arguments that appellant makes in the present appeal. In rejecting White's arguments, we concluded: (1) "There is no authority requiring that a jury be instructed sua sponte on the various *Clark* factors." (*White II*, *supra*, 107 Cal.App.5th at p.1277, rev. gr.) (2) "The jury was correctly instructed, 'A person acts with reckless indifference to human life when he knowingly engages in criminal activity that he knows involves a grave risk of death.'" (*Id.*, at p. 1279). (3) "The jury factually found that White had been a 'major participant' in the underlying felony and had acted with 'reckless indifference to human life.'" (*Id.*, at p. 1272.)

We noted that our decision in *White II* is consistent with *People v. Farfan* (2021) 71 Cal.App.5th 942, 956. (*White II*, *supra*, 107 Cal.App.5th at pp. 1277-1278, rev. gr.) Our decision is also consistent with another opinion filed after *White II*: *People v. Whipple* (2025) 110 Cal.App.5th 1177, review granted July 16, 2025, S291312.

Our reasoning in *White II* applies with equal force to the arguments of appellant, White's codefendant. Pursuant to the doctrine of stare decisis, the superior court was bound to follow *White II*. "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We see no reason to depart from our analysis and conclusions in *White II*.

*Disposition*

The order denying appellant's section 1172.6 petition is affirmed.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

7

Pauline Maxwell, Judge

Superior Court County of Santa Barbara

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.